**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) ) |
| JAMES VORLEY and CEDRIC CHANU, | ) No. 18 Cr. 35 (Tharp, J.) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL BRADY AND RULE 16 DISCOVERY**

Defendants James Vorley and Cedric Chanu respectfully submit this memorandum of law in support of their motion, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure, to compel the disclosure of evidence relating to allegations of prosecutorial misconduct, including a fraud on this Court.[1]

**PRELIMINARY STATEMENT**

This motion seeks an order requiring the government to disclose evidence relating to allegations of serious prosecutorial misconduct that, if true, has had, and will continue to have, a direct impact on this case. The evidence is reasonably expected to provide a basis for dismissal of the superseding indictment and, failing that, to support a key defense at trial—namely, that the government attempted to shoehorn alleged "spoofing" into the wire fraud statute in order to cover up its own misconduct. Although the government has gone to extraordinary lengths to avoid discovery of the alleged misconduct, recent public disclosures by a Department of Justice ("DOJ")

---

[1] Pursuant to Local Rule 37.2, defense counsel have requested these materials in multiple conversations over the past year by phone and email from Michael O'Neill, Cory Jacobs, Avi Perry, and Brian Young. The government continues to refuse to produce these documents.

1

"whistleblower" and former colleague of the lead prosecutors in this case have removed any credible basis to suppress the requested evidence.

On January 19, 2018, the government charged Vorley and Chanu in a criminal complaint alleging various conspiracies, wire fraud, commodities fraud, and spoofing. Ex. A, Criminal Compl., Dkt. 1. The complaint noted that the five-year statute of limitations applicable to the spoofing charges had been tolled as of December 9, 2016, based on the issuance of an order by Chief Judge Castillo on December 20, 2016, pursuant to 18 U.S.C. § 3292 (the "tolling order"). *Id.* ¶ 3 n.2. Six months later, the government dropped these charges and instead indicted the defendants for conspiracy to commit wire fraud and wire fraud affecting a financial institution, which has a ten-year statute of limitations. Indictment, Dkt. 12; 18 U.S.C. § 3293. Notably, wire fraud affecting financial institution carries a thirty-year maximum sentence, 18 U.S.C. § 1343, compared with ten years for spoofing, 7 U.S.C. §§ 6c(a)(5)(C) & 13(a)(2).

Following their indictment, the defendants made repeated requests seeking production of the government's application for the tolling order, as well as information concerning possible misconduct by the former lead prosecutor in the precious metals investigation, Sarah Hall, who had been summarily removed from the case. In response, the government has consistently sought to avoid these disclosures by denying knowledge of any misconduct and disclaiming reliance on the tolling order. *See* Ex. B, Tr. 9/25/18 at 7:1-3, 7:11-14, 8:16-21; *see also* Gov't Opp'n, *United States v. Bases, et al.*, 18-cr-00048, (N.D. Ill.), Dkt. 136 (opposing production of the tolling order application).

Notwithstanding the government's evasions, the news media have now supplied the explanation for the delay in returning an indictment and the decision to charge wire fraud affecting a financial institution, rather than spoofing and the other changes that would have required reliance

2

on the tolling order. Specifically, on February 2, 2020, *The Wall Street Journal* reported that a former prosecutor in the DOJ's Fraud Section, Ankush Khardori,[2] has filed a whistleblower complaint with the Office of Inspector General accusing his colleagues and supervisors of improperly using mutual legal-assistance treaty requests ("MLATs") to circumvent the applicable statute of limitations in multiple fraud cases. *See* Ex. C, Aruna Viswanatha & Dave Michaels, *Justice Department Accused of Abusing Process to Extend Statute of Limitations*, The Wall Street Journal (Feb. 2, 2020), https://www.wsj.com/articles/justice-department-accused-of-abusing-process-to-extend-statute-of-limitations-11580657654 (last visited Feb. 25, 2020). According to Mr. Khardori, "[t]he circumstantial evidence indicates that there was a deliberate effort to deceive the relevant judges into believing that [a Justice Department unit] had, in fact, made its requests for foreign evidence because of a legitimate interest in obtaining that evidence," but "[t]he real purpose of the request and the application to the judge was to buy more time to build a case." *Id.* (alteration in original).

The misconduct reportedly involved the most senior supervisors in the Fraud Section, including prosecutors involved in this case.[3] Moreover, in describing matters in which he personally witnessed such MLAT abuses, Mr. Khardori reportedly referenced *Bases*, a companion spoofing case before Judge Lee that relies on the same tolling order used to bring the criminal

---

[2] Prior to his departure from the DOJ on or about January 31, 2020, Mr. Khardori entered an appearance for the government in this case. *See* Dkt. No. 111; *see generally* Local Rules of the United States District Court for the Northern District of Illinois, Local Rule 83.16(b) ("No appearance form need be filed by the United States Attorney or any Assistant United States Attorney where the appearance is on behalf of the United States, any agency thereof or one of its officials.").

[3] *See* Ex. D, Jack Crowe, *Former Justice Department Attorney Warns That Prosecutorial Abuses Go Beyond FISA Process*, National Review (Feb 13, 2020), https://www.nationalreview.com/news/former-justice-department-attorney-warns-that-prosecutorial-abuses-go-beyond-fisa-process/ (last visited Feb. 25, 2020) (noting that Mr. Khardori asserts that Fraud Section supervisory personnel "presided over a culture in which MLAT abuses were routinely overlooked or even encouraged").

3

complaint in this action and is also being prosecuted by Fraud Section Assistant Chief Avi Perry. Mr. Khardori also reportedly observed fraudulent use of MLATs in *United States v. Bogucki*, 3:18-cr-00021 (N.D. Cal.), a case that resulted in a Rule 29 acquittal last year and was prosecuted by Fraud Section Deputy Chief Brian Young, the other half of the Fraud Section prosecution team here, and Fraud Section Trial Attorney Sarah Hall, who led the investigation of this case and the *Bases* case until she abruptly departed government service just prior to the spoofing charges being leveled against the defendants here.[4]

If true, Mr. Khardori's allegations reflect an abject abuse of prosecutorial power at the expense of defendants' rights, whereby the Fraud Section, including the prosecutors involved in investigating and prosecuting this case, have (i) engaged in a fraud on the court, (ii) charged this case in a manner designed to cover up that misconduct, and (iii) falsely informed the defense on multiple occasions that they were not aware of any wrongdoing. Specifically, Mr. Khardori's allegations detail a troubling pattern of deceptive conduct, in which:

- On December 20, 2016, the Chief Judge of this Court was misled into issuing a tolling order that lacked any legitimate factual basis.
- The Fraud Section subsequently relied on that fraudulently obtained tolling order in its criminal complaint and thus implicitly made misrepresentations to Magistrate Judge Mason, who authorized that complaint and signed attendant arrest warrants based on, *inter alia*, time-barred spoofing charges.
- After the criminal complaint was unsealed in January 2018, and defense counsel made clear to the government that defendants were willing to appear voluntarily and prepared to do so as soon as possible, the government used the pretext of "resource" constraints due to a pending trial to delay the appearance by six months as they debated internally about how to handle concerns relating to the tolling order.
- On July 24, 2018, in order to avoid disclosing the defects in the underlying criminal complaint, the government issued an indictment based on wholly new charges—wire fraud

---

[4] The court in *Bogucki* at one point ordered a hearing to inquire into the government's true motivations for obtaining the tolling order. *See* Dkt. 53, Tr. 3/23/18 at 6:1-7:25. However, the parties subsequently agreed to cancel the hearing.

4

- and conspiracy to commit wire fraud affecting a financial institution—that significantly increased both the maximum sentence and the permissible statute of limitations period, allowing it to proceed independently of the tolling order.

- After defense counsel expressly asked for the application in support of the tolling order, the prosecution team at that time (Fraud Section Trial Attorneys Michael O'Neill and Corey Jacobs) sought to moot the request by disclaiming reliance on the tolling order in a conference before this Court, going so far as to commit that any future charges that might be brought in the case would never rely on the tolling order, but without revealing or correcting the prior misrepresentations to Chief Judge Castillo. Ex. B, Tr. at 7:1-3, 7:11-14, 8:16-21.

- During a bail hearing for Mr. Chanu before a Magistrate Judge—held on the same day that Mr. Jacobs and Mr. O'Neill disclaimed reliance on the tolling order under any circumstances—they claimed that they had no idea why Mr. Chanu's voluntary appearance had been delayed by almost nine months and failed to disclose any concerns about the tolling order in response to a direct question from the Court: "Quite frankly, your Honor, we are not sure what the resource issue could be . . . except . . . to the extent that it could have been the United States being on trial." Ex. E, Tr. 9/25/18 at 12:20-13:1.

- In October 2018, when defense counsel again requested information about potential misconduct by former Fraud Section Trial Attorney Sarah Hall—who led the precious metals investigation, secured the cooperation of the government's cooperating witness, David Liew, and then abruptly left government service under suspicious circumstances— Mr. O'Neill and Mr. Jacobs denied knowledge of whether Ms. Hall was involved in potential misconduct and, despite their affirmative *Brady* obligations, tried to shift the burden to the defense to provide specific information about such misconduct before undertaking any review.

- Thereafter, Mr. O'Neill and Mr. Jacobs were replaced by a wholly new prosecution team, consisting of Mr. Perry and Mr. Young, the same prosecutors who (together with Ms. Hall) were involved in the cases Mr. Khardori identified by name as involving fraudulently obtained tolling orders. After defense counsel reiterated their request for information regarding the tolling order and potential prosecutorial misconduct, Mr. Perry and Mr. Young, like their predecessors, denied awareness of any potential misconduct and sought to shift the burden to the defense to demonstrate the existence of wrongdoing in order to receive any such information.

Against this backdrop, Mr. Vorley and Mr. Chanu now seek an order compelling production of documents and other information concerning the tolling order and prosecutorial misconduct. Such evidence is expected to serve as the basis for motions seeking redress for the deprivation of their constitutional rights, including a motion to dismiss the superseding indictment based on egregious prosecutorial misconduct or prejudicial pre-indictment delay, and could also

5

support a trial defense that the government overreached to charge the defendants with wire fraud affecting a financial institution in order to cover up its own misconduct. Of course, the defendants cannot assess the full impact of the evidence, which remains in the government's sole possession, without the disclosures sought by this motion.

## BACKGROUND

The government submitted an MLAT request to the United Kingdom on December 9, 2016. *See* Ex. A at ¶ 3 n.2, p. 3. The government thereafter made an application to Chief Judge Castillo to suspend the running of the statute of limitations, which he granted on December 20, 2016, based on the government's claimed need to acquire evidence in the United Kingdom. *Id.* On January 19, 2018, Magistrate Judge Mason signed a criminal complaint charging the defendants with: (1) conspiracy pursuant to 18 U.S.C § 371; (2) conspiracy pursuant to 18 U.S.C § 1349; (3) wire fraud pursuant to 18 U.S.C §§ 1343 and 2; (4) commodities fraud pursuant to 18 U.S.C § 1348 and 2; and (5) spoofing and commodities fraud pursuant to 7 U.S.C. §§ 6c(a)(5)(C), 13(a)(2), and 13c(a). *Id.* ¶ 3, pp. 1-3. The complaint noted that the statute of limitations for the spoofing charges—which otherwise would have been time-barred—had been tolled by the tolling order. *Id.* ¶ 3 n.2, p. 3.

The tolling order applied both to this case and to a parallel investigation related to the precious metals market, involving two traders at Bank of America Merrill Lynch, Edward Bases and John Pacilio. That investigation also resulted in charges based on a criminal complaint that relied on the tolling order. *Bases*, 1:18-cr-0035, Dkt. 1. Mr. Khardori eventually assumed the role of lead prosecutor in that case and, according to media reports, decided against relying on the

tolling order in that case due to concerns that it had been fraudulently obtained. *See, e.g.,* Viswanatha, *supra*, at 3.[5]

Less than a month after the complaint in this case was filed, counsel for defendants advised the government that defendants were prepared to waive extradition, fly to Chicago, and appear voluntarily to face the charges. The government requested that defendants not do so, explaining to Mr. Chanu's counsel that it had to work through some "resource" issues relating to a pending trial. At no time did the government advise the defendants of any concerns relating to the tolling order, which would have allowed defendants an opportunity to insist on their right to a speedy indictment and to move immediately to dismiss the complaint with prejudice.

On July 24, 2018, the government issued an indictment based on new charges, wire fraud affecting a financial institution and conspiracy to commit wire fraud affecting a financial institution, and foregoing all of the charges listed in the complaint. Notably, a charge of wire fraud affecting a financial institution carries a thirty-year maximum sentence, 18 U.S.C. § 1343, and has a ten-year statute of limitations period, 18 U.S.C. § 3293(2), whereas all of the charges in the complaint had shorter statutes of limitations. Eager to move forward and clear their names, both defendants waived their right to contest extradition and voluntarily flew to the United States to face the charges. At the time, of course, the defendants were not aware of any allegation of prosecutorial misconduct during the investigation of their case—a factor that could have served as a bar to extradition.

---

[5] *See also* Crowe, *supra*, note 2 ("[The Bases case] would have been closed due to the statute of limitation before Khardori was assigned to it if not for an MLAT request. Khardori writes that he intended to rely on the MLAT to defend the timeliness of the charges, until a colleague warned him that he should first review internal emails from the time the request was filed. When he did so, he discovered that a prosecutor on the case had explicitly referred to the time limit imposed by the statute of limitation in an email reminding colleagues that the MLAT request needed to be filed urgently.").

On September 24, 2018, skeptical about the circumstances of Ms. Hall's sudden departure and the need for an MLAT when all evidence in the United Kingdom was in the possession of government cooperator Deutsche Bank, defense counsel requested the affidavit submitted in support of the tolling order. Ex. F, Letter from R. Burlingame, Sept. 24, 2018. The government refused to produce the affidavit but, in an effort to foreclose further inquiry, represented on the record before this Court that it would not rely on the tolling order.[6] On the same day, in a bail hearing before Magistrate Judge Mason, the government disavowed any knowledge about the circumstances underlying the government's request to delay defendants' voluntary appearance.[7]

On October 4, 2018, as the government's refusal to produce the affidavit and disavowal of the tolling order raised more and more questions, defense counsel again requested information about any misconduct by government agents or attorneys involved in Mr. Vorley's investigation or prosecution. Ex. G, Letter from R. Burlingame, Oct. 4, 2018. The government dismissed those concerns as mere speculation. Messrs. O'Neill and Jacobs were subsequently removed from this case and replaced by a different prosecution team.

---

[6] Trial Attorney O'Neill:

- "[I]t's absolutely correct that the government is not—will not rely upon the tolling order . . . ." Ex. B, Tr. at 7:1-3;

- "[I]n light of the indictment in the case, the government is not relying upon the tolling order and should you know, if the government were to supersede the indictment it would also not rely upon the tolling order." *Id.* at 7:11-14;

- "And just to be clear, should that happen, the government still would not rely upon the tolling order . . . which relates to an MLAT that was submitted to the United Kingdom." *Id.* at 8:16-19.

[7] The Court: "What's the resources issue that was quoted here in defendant's letter?" Ex. E, Tr. at 12:18-19.

Mr. Jacobs: "Quite frankly, your Honor, we are not sure what the resource issue could be . . . except . . . to the extent that it could have been the United States being on trial. We are just not sure." *Id.* at 12:20-13:1.

8

Just over a year later, on November 5, 2019, defense counsel renewed their request to the new prosecutors on the case, Fraud Section Assistant Chief Avi Perry and Deputy Chief Brian Young. The conversation unfolded in similar fashion, with Messrs. Young and Perry claiming that, unless the defendants identified specific wrongdoing, the government had no duty to look further into the situation. Defense counsel memorialized their request in a letter to the government following the call. Exhibit G, Letter from Mr. Burlingame, Nov. 16, 2019. Ten days later, the government superseded the indictment, again excluding from the case the spoofing and other charges carrying statutes of limitations shorter than ten years. Dkt. 127.

On February 2, 2020, *The Wall Street Journal* reported that Mr. Khardori, who shared prosecutorial duties with Mr. Perry in *Bases*, had filed a memorandum with the DOJ's inspector general regarding the Fraud Section's fraudulent use of MLAT requests in *Bases*, *Bogucki*, and other investigations to improperly buy time to bring those prosecutions. Viswanatha, *supra*, at 3; *see also* Crowe, *supra*, at note 2. Specifically, Mr. Khardori alleged that his fellow prosecutors fraudulently submitted MLAT requests to improperly extend the statute of limitations in the precious metals spoofing investigation that resulted in the *Bases* case—allegations that apply equally here given that they resulted in the same tolling order underlying the criminal complaint in this case. Viswanatha, *supra*, at 3.[8]

After the news of the alleged MLAT abuses broke, on February 6, 2020, defendants made yet another letter request for information related to prosecutorial misconduct surrounding the MLAT request and tolling order, this time citing Mr. Khardori's allegations. Ex. H, Letter from Mr. Mazur, Feb. 6, 2020. After acknowledging the defendants' request for a response by February

---

[8] Mr. Khardori reportedly also alleged that that fraudulent MLAT requests "were a common practice" and that DOJ Fraud Section supervisors "presided over a culture in which MLAT abuses were routinely overlooked or even encouraged," including allegations that Fraud Section supervisors instructed attorneys not to create a record of such deception by putting anything "in writing." Crowe, *supra*, at note 2.

9

11, 2020, and ignoring the defendants' requests for a call to discuss the request for over a week, the government sent a one-line email as follows: "Counsel, we have reviewed your letter. We do not believe we have any discoverable materials to which you are entitled in response to your requests."

## ARGUMENT

*Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure require disclosure of information relating to the alleged prosecutorial misconduct in the investigation and prosecution of this case. Specifically, the government should provide the following materials that have been requested by the defense:

- Any and all memoranda or complaints drafted by Mr. Khardori alleging prosecutorial misconduct, including but not limited to the conduct referenced in the media;

- Any and all communications, notes, documents, or information concerning the alleged misconduct related to applications for tolling orders and requests for mutual legal assistance to a foreign country, including but not limited to the emails referenced in the media, efforts to deceive judicial officers into issuing tolling orders, instructions not to put "in writing" anything that would suggest such deception, questions raised about the improper use of MLAT requests to obtain tolling orders, and determinations that tolling orders had been improperly sought and should not be relied upon;

- Any and all communications, notes, or other documents relating to the MLAT request and related application for the tolling order referenced in the complaint in this case, including but not limited to the request and application themselves, any response to the MLAT request, any follow-up by the government, and documents showing the reason for the MLAT request;

- Any and all materials pertaining to or generated by any investigation of the events described in the media, including any materials that document the knowledge of or participation in the events by any individual prosecutor who has ever worked on this case, including but not limited to those prosecutors acting in a supervisory capacity; and

- Any and all communications, notes, or other documents regarding our requests and requests by other defense attorneys concerning the alleged misconduct related to applications for tolling orders and requests for mutual legal assistance to a foreign country, including but not limited to the information sought by our other requests.

This information is not available from other sources and is critical to defendants' exercise of their constitutional rights through pre-trial motions, including due process motions regarding prosecutorial misconduct and post-indictment delay, and would support a key defense at trial.

**I.      Applicable Law**

*Brady* imposes an obligation on prosecutors to identify and disclose to the defense any favorable information known to any member of the prosecution team. *Brady*, 373 U.S. at 87; *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The favorable information need not be in the form of admissible evidence. *United States v. Bowie*, 198 F.3d 905, 909 (D.C. Cir. 1999). "By requiring the prosecutor to assist the defense in making its case, the *Brady* rule represents a limited departure from a pure adversary model." *United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985). This obligation underscores the fact "the prosecutor's role transcends that of an adversary: the prosecutor 'is the representative not of an ordinary party to a controversy, but of a sovereignty … whose interest … in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

With respect to production of evidence of potential prosecutorial misconduct, courts impose a "relatively low burden" on the defense, which must show only a "colorable basis" for a claim. *United States v. Heideke*, 900 F.2d 1155, 1158 (7th Cir. 1990). Moreover, where there are indications of prosecutorial misconduct and the government has sole possession of the relevant evidence, courts should not rely on the government's own representations as to the relevance of that evidence. *United States v. White*, 492 F.3d 380, 411 (6th Cir. 2007).

The Seventh Circuit has also recognized that Rule 16 "requires the production of inculpatory as well as exculpatory evidence." *United States v. Baker*, 453 F.3d 419, 424 (7th Cir.

11

2006).[9]  When the government fails to meet its obligations under *Brady* and Rule 16, a court may order a party to provide the requested discovery "or enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(A) & (d)(2)(D).

## II.     The Court Should Compel Production of the Requested Information

Despite repeated requests from the defense, the government has serially refused to provide defendants with information about prosecutorial misconduct in the investigation and prosecution of this case.  Instead, the prosecutors have disavowed any knowledge of wrongdoing and attempted to shift the burden to the defense to prove it.  They have changed their theory of the case in what appears to be an attempt to avoid their disclosure obligations.  And, even when the defense finally pointed to the specific misconduct alleged by Mr. Khardori in *The Wall Street Journal*, the government still refuses to disclose anything.  Such evasive maneuvers have no place in a federal criminal prosecution and, if permitted, would violate the defendants' constitutional rights.

The disclosure of information relating to the alleged prosecutorial misconduct may give rise to discovery motions to resolve constitutional issues before trial, including motions for dismissal of the indictment based on egregious prosecutorial misconduct, pre-indictment delay, and due process issues relating to the defendants' decision to waive a contested extradition without knowledge of government wrongdoing, including a fraud on this Court.  Such motions would be

---

[9] The Current DOJ Manual recognizes that because "it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-5.001 (2020), Policy Regarding Disclosure of Exculpatory and Impeachemnt Information, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings.  *See also* Model Rule of Professional Conduct 3.8 (adopted by the U.S. District Court for the Northern District of Illinois as the Rules of Professional Conduct, *see* Local Rule 83.50) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense. . . .").

ripe if, as Mr. Khardori alleges, the tolling order application was "a deliberate effort to deceive the relevant judges" and in turn prejudiced the accused. Defendants cannot properly evaluate the extent of harm caused by such misconduct, and the corresponding avenues of redress, without disclosure of the evidence of prosecutorial misconduct. However, all indications suggest that the government knew of the prosecutorial misconduct well in advance of the indictment and spent six months devising how to cover up that misconduct by proceeding without the tolling order and charging offenses within a thirty-year maximum sentence. 18 U.S.C. § 1343.

Moreover, the government's abandonment of the spoofing charges that would require reliance on the tolling order does not render the alleged misconduct irrelevant at trial. Indeed, the defendants' core task at trial is to rebut the government's theory that they committed wire fraud. As this Court is aware, the charges are a poor fit for the alleged conduct, requiring the prosecution to show an implied misrepresentation in anonymous electronic market via orders that on their face convey solely the type of metal, quantity, price and direction (buy or sell). Several market experts will testify in conformity with the motion to dismiss amici that such a showing cannot be made because no such implied representation exists.[10] If the defendants can support such testimony with evidence that the prosecutors shoehorned a spoofing case into a wire fraud charge to cover up their

---

[10] To refresh, amici stated as follows:

- "[A]n open, executable order does not represent any facts regarding trading intentions, except to honor the order according to its terms if it is executed." Brief of *Amicus Curiae*, Futures Industry Association ("FIA"), Dkt. 107 at 13.

- "Orders subject to the execution and market risk cannot constitute false statements. When an order is placed on COMEX, the only information conveyed to the market is the commodity to be traded, the price of the order, and the quantity available to trade at that price." Brief of *Amici curiae*, Bank Policy Institute, Dkt. 96 at 9. "Therefore, even if a trader harbors a subjective intent to cancel an order before it is matched, that subjective intent could not change any information made available to the market." *Id.*

13

own wrongdoing, that evidence will provide important support for defense arguments that the crime charged does not fit the facts, and that the prosecution is asking the jury to stretch to make a finding well beyond what those facts will bear. *See Whitley*, 514 U.S. at 445 (defense was entitled to attack the "thoroughness and even the good faith of the investigation"); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant. . . ."); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (reversing defendant's conviction based on suppression of evidence that would have been "discrediting, in some degree, of the police methods employed in assembling the case against him.").

Moreover, that the government has abandoned the spoofing charges that would have required it to rely on the tolling order has no bearing on its duty of candor to the court or its allegiance to the principles of truth and transparency upon which our criminal justice system rests, and any claim to the contrary flouts *Brady* and Rule 16. At this late date, more than fifty years after *Brady*, the government should not be acting strategically to avoid disclosure of favorable information or its own misconduct. It should be disclosing the information promptly. If the government perceives a basis to exclude the evidence, it can move to exclude it. But the Court should not allow the government to suppress evidence of prosecutorial misconduct based on its own, self-serving determination that the information is no longer relevant based on a change in the government's charging decisions.[11]

---

[11] It bears note that separate and apart from its *Brady* and Rule 16 obligations, if Mr. Khardori's allegations are true, the government has an ethical duty to clarify the record with this Court and the other judges victimized by the alleged fraud on this Court: Chief Judge Castillo, Judge Lee, and Magistrate Judge Mason. *See* Model Rule of Professional Conduct 3.3 (adopted by the U.S. District Court for the Northern District of Illinois as the Rules of Professional Conduct, *see* Local Rule 83.50) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . .").

14

**CONCLUSION**

For the foregoing reasons, defendants respectfully ask that the Court compel the government to disclose the requested material. Any further delay in the production of this material will prevent defendants from fully and adequately protecting their rights and preparing for the fast approaching trial.

Dated: February 25, 2020                                   Respectfully submitted,

*/s/ Roger A. Burlingame*                                   */s/ Michael G. McGovern*
Roger A. Burlingame                                         Michael G. McGovern (*pro hac vice*)
Matthew L. Mazur (*pro hac vice)*                           Helen Gugel (*pro hac vice*)
Dechert LLP                                                 Megan A. McEntee (*pro hac vice*)
160 Queen Victoria Street                                   Ropes & Gray LLP
London EC4V 4QQ                                             1211 Avenue of the Americas
United Kingdom                                              New York, NY 10036
Phone: +44 20 7184 7000                                     Telephone: (212) 596-9000
Matthew.Mazur@dechert.com                                   michael.mcgovern@ropesgray.com
Roger.Burlingame@dechert.com                                helen.gugel@ropesgray.com
                                                            megan.mcentee@ropesgray.com
Christopher Burrichter
Dechert LLP                                                 Aaron M. Katz (*pro hac vice*)
35 West Wacker Drive, Suite 3400                            Ropes & Gray LLP
Chicago IL 60601                                            800 Boylston Street
Telephone: (312) 646-5800                                   Boston, MA 02199
Christopher.Burrichter@dechert.com                          Telephone: (617) 951-7000
                                                            aaron.katz@ropesgray.com
***Attorneys for James Vorley***
                                                            Laura G. Hoey
                                                            Ropes & Gray LLP
                                                            191 North Wacker Drive
                                                            Chicago, IL 60606
                                                            Telephone: (312) 845-1318
                                                            laura.hoey@ropesgray.com

                                                            ***Attorneys for Cedric Chanu***

15

**CERTIFICATE OF SERVICE**

    I, Roger A. Burlingame, hereby certify that on February 25, 2020, the foregoing was filed via the Court's CM/ECF system, which will automatically serve and send notification of such filing to all registered attorneys of record.

*/s/ Roger A. Burlingame*
Roger A. Burlingame
