UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 18 Cr. 35 (Tharp, J.) |
| v. | ) | |
| | ) | |
| JAMES VORLEY and CEDRIC CHANU, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO PRECLUDE THE GOVERNMENT'S PROPOSED
USE OF "CERTIFICATES" TO ADMIT CERTAIN EVIDENCE[1]**

On August 11, 2020, the government informed the defendants of its intent to authenticate and admit certain government exhibits using certificates instead of live witnesses. *See* Ex. A, Letter from Brian R. Young, Aug. 11, 2020 (attaching ten certificates). The ten certificates collectively cover almost half of the government's 200 proposed exhibits—a collection ranging from market and trade data produced by the CME, to voluminous miscellaneous materials produced by Deutsche Bank, to the CFTC order instituting and simultaneously settling Deutsche Bank's liability for $30 million, complete with a recitation of legal and factual findings. While some of the exhibits—such as the CME's market and trade data—qualify as records of regularly conducted activity under Rule 803(6), which can be properly authenticated with a certificate in accordance with Federal Rule of Evidence 902(11) (for domestic records) or 18 U.S.C. § 3505 (for foreign records), many others do not. Moreover, admitting many of the proposed exhibits via

---

[1] This motion focuses on the defendants' objections to the authentication and admission of certain government exhibits using certificates instead of a live witness. The defendants have already moved to exclude some of the same exhibits on other grounds, including relevancy and undue prejudice, and they reserve their rights to raise other appropriate objections to the exhibits.

certificates would not merely violate the rules of evidence, but, because they contain testimonial statements, would also violate the Confrontation Clause.

Numerous exhibits that the government seeks to admit without calling a live witness simply cannot be admitted this way. For instance, the government proposes to admit the CFTC's order memorializing its settlement with Deutsche Bank pursuant to Rule 902(11) using a certificate signed by the CFTC's Secretary, Christopher Kirkpatrick. Mr. Kirkpatrick does not appear to have any personal knowledge of the settlement. Although his certificate states that the CFTC's order was made at the time of the matters set forth therein as part of the regular business of the CFTC, it fails to recite the required factors for admission as a business record under Rule 803(6), which it clearly is not. Instead, it is a legal order resulting from a negotiated, no admit/no deny settlement between the bank and one of its regulators. It in no way reflects the sort of regularly conducted and routine business activity through a business record. The order's "findings"—including that Deutsche Bank's precious metals traders engaged in spoofing, that the bank failed to supervise them properly, and that the CFTC imposed a $30 million penalty for this conduct—contain multiple levels of inadmissible hearsay not subject to any exception.

Likewise, the Deutsche Bank documents include the letter from its human resources department sent to Mr. Vorley, shortly before his last day of employment, informing him that he would be required to sit for an interview as part of an investigation of suspected spoofing that could result in the forfeiture of his deferred compensation. They also include the audio recording of the interview. The government proposes to admit these exhibits relating to Deutsche Bank's internal investigation using a certificate signed by Margaret Dolson, the "Director and Global Head of eDiscovery Services at Deutsche Bank." Contrary to Ms. Dolson's declaration stating that such records were made and kept as part of a "regularly conducted business activity," they were clearly

2

generated as part of the bank's internal investigation, not in the regular course of its banking business.  Ex. A-8, Cert. Foreign Business Records Margaret Dolson, Jul. 30, 2020 (DOJ04563714).  Her certification cannot transform them into business records admissible under Rule 803(6) simply by her dubious and untested say-so.

Finally, a number of the government's proposed exhibits—including the CFTC's order— as well as several of the proposed certificates contain testimonial statements that cannot be admitted without a live witness because doing so would deny the defendants the opportunity for cross examination.  For example, the CFTC order states that "certain precious metals traders [] engaged in a scheme to manipulate the price of precious metals futures by utilizing a variety of manual spoofing techniques" and that the traders were "able to induce other market participants into buying and selling" and "succeeded in manipulating the prices of" precious metals futures contracts.  Ex. B, Order, *In re Deutsche Bank AG and Deutsche Bank Securities, Inc.*, CFTC Dkt. No. 18-06, Jan. 29, 2018, at pp. 1-2 (DOJ00643291).  The certificates offered by the government also include testimonial statements by Ms. Dolson and an employee of the FDIC.  The Confrontation Clause bars the admission of such sworn out-of-court declarations.

The rules providing for the use of certificates to authenticate certain evidence "does not give a party license to dump business records into evidence without giving an adverse party an opportunity to question the certificate's signer where such questioning may be warranted." *United States v. Green*, 648 F.3d 569, 580 (7th Cir. 2011)  Much less do they authorize a party to sneak into evidence, through the guise of "authentication," hearsay assertions of fact about the conduct at issue in the trial.  Cross-examination is clearly warranted where, as here, the "records" purporting to be certified do not qualify as business records and the certifications include hearsay

statements that go well beyond mere authentication of documents and touch on the very facts in issue at trial.

## THE CERTIFICATES

The ten certificates that the government proposes to use at trial concern evidence produced by the CME, the FDIC, the CFTC and Deutsche Bank.

### CME Market & Trade Data

The government proposes to authenticate and admit historical market and trade data (known as Rapid and Armada data), as well as a record listing the "Tag50" identification codes assigned to various traders, using two separate declarations by Khadija Waugh, an in-house lawyer at the CME. In each declaration, Ms. Waugh, has certified that the records meet each of the requirements of Rule 803(6). Ex. A-6, Decl. Khadija Waugh, Mar. 9, 2020 (DOJ04561484); Ex. A-7, Decl. Khadija Waugh, Jun. 2, 2020 (DOJ04562698). This certification meets the requirements of Rule 902(11), the records fit squarely within Rule 803(6), and the defendants have no objection to either the use of Ms. Waugh's certificates instead of her testimony or to the admission of the related records.

### FDIC Documents

The government proposes to admit insurance certificates and other records concerning Deutsche Bank Trust Company Americas and Deutsche Bank Trust Company Delaware using two certificates signed by Annemarie Boyd, an Assistant Executive Secretary at the FDIC. In addition to Ms. Boyd's certification to the records' authenticity and their creation and maintenance in the regular course of the FDIC's activities, however, she also certifies:

> 3. … that insurance applicable to the main office of Deutsche Bank Trust Company Americas [and Deutsche Bank Trust Company Delaware] is applicable to any domestic (U.S.) branch office …; [and]

> 4. ... that, after diligent search, no record or entry in the official records of the FDIC has been found to exist which terminated the status of Deutsche Bank Trust Company Americas [and Deutsche Bank Trust Company Delaware], as an insured depository institution ... and that Deutsche Bank Trust Company Americas [and Deutsche Bank Trust Company Delaware], retained its status as an insured depository institution of the FDIC from January 1, 1934 [with respect to Deutsche Bank Trust Company Delaware, October 7, 1985], through and including March 21, 2020.

Ex. A-1, Cert. Annemarie H. Boyd, Mar. 24, 2020 (DOJ04563703); Ex. A-2, Cert. Annemarie H. Boyd, Mar. 25, 2020 (DOJ04563708). While the defendants do not challenge the authenticity of the FDIC records, Ms. Boyd's sworn statements beyond her certification of the records as business records cannot be admitted into evidence without a live witness.

### Deutsche Bank's CFTC Settlement

The government proposes to introduce the CFTC's order against Deutsche Bank AG and Deutsche Bank Securities, Inc., using a certificate by Christopher Kirkpatrick, Secretary of the CFTC. Mr. Kirkpatrick purports to certify that the order is a business record of the CFTC. Ex. A-4, Rule 902(11) Cert. Christopher J. Kirkpatrick, Apr. 17, 2020 (DOJ04563713). As noted, the order contains (i) the CFTC's extensive factual findings and conclusions of law, including its determination that the bank's traders—clearly the defendants—committed acts of market manipulation and spoofing in the precious metals markets and that the bank failed to diligently supervise them, (ii) Deutsche Bank's no-admit/no-deny offer of settlement, and (iii) the CFTC's order requiring, among other things, that Deutsche Bank pay a $30 million civil monetary penalty. *See* Ex. B, Order. The CFTC's order is inadmissible for multiple reasons, *see* Def. Omnibus Mot. 9-11 (Dkt. 27), and certainly cannot be admitted through Mr. Kirkpatrick's certificate.

### Documents Produced By Deutsche Bank

The government has produced certificates purporting to authenticate Deutsche Bank records signed by three different Deutsche Bank employees.

First, the government seeks to authenticate a New York State banking license, an Excel spreadsheet relating to Deutsche Bank's corporate organization, and a Delaware certificate of incorporation using a certificate of authenticity signed by Carol Sarocco, who is Head of Regional Corporate Governance for Deutsche Bank AG. Ms. Sarocco's name appears on the government's witness list, and she is expected to testify at trial. Without regard to the requirements of Rule 902(11), Ms. Sarocco's certificate states that the banking license, corporate organization spreadsheet, and certificate of incorporation were "maintained by Deutsche Bank and are true copies of records that Deutsche Bank retained for the purposes of running its business." Ex. A-3, Cert. Carol Sarocco, Jul. 28, 2020 (DOJ04563718).

Second, the government seeks to admit records relating to Deutsche Bank's payment of a $30 million fine to the CFTC using a certificate of authenticity signed by Joann Lane, who is Head of Outside Counsel Management for Deutsche Bank AG. Ms. Lane's certificate, like Ms. Sarocco's, does not satisfy the requirements of Rule 902(11). Instead, the certificate states only that they are "records that Deutsche Bank retained for the purposes of running its business." Ex. A-5, Cert. Joann Lane, Jul. 30, 2020 (DOJ04563720).

Third, the government seeks to admit myriad government exhibits—including personnel files, photographs, emails, electronic chats, policy manuals, and an audio recording of Mr. Vorley's interview during Deutsche Bank's internal investigation—using three certificates signed by Margaret Dolson, the Global Head of eDiscovery Services for Deutsche Bank AG. In one declaration, purporting to certify the authenticity of foreign business records pursuant to 18 U.S.C. § 3505(a)(1), Ms. Dolson declares that 59 different government exhibits were made and kept in the regular course of Deutsche Bank's business. Ex. A-8, Cert. (DOJ04563714). In another, Ms. Dolson declares that 78 government exhibits are "copies of electronic

communications that Deutsche Bank stores and maintains electronically." Ex. A-9, Cert. Margaret Dolson, July 30, 2020 (DOJ04563721). Even if some of these records could qualify as business records under Rule 803(6), the government's proposal to admit essentially all of these Deutsche Bank records using certificates should be rejected.

Finally, Ms. Dolson also certifies that "the time zones [for dozens of electronic communications] reflect, to the best of Deutsche Bank's current knowledge and understanding after a diligent and reasonable investigation, the time zones that apply to the [communications]." Ex. A-10, Doc. Cert. Margaret Dolson, July 31, 2020 (DOJ04563727). But this declaration—containing no indication of the process by which the time zones were determined and clearly prepared for the government's use at trial—cannot be admitted without a live witness whom the defendants can cross-examine.

## ARGUMENT

### I. THE PROPOSED CERTIFICATES SEEK TO AUTHENTICATE EXHIBITS THAT ARE NOT RECORDS OF A REGULARLY CONDUCTED ACTIVITY

The Federal Rules of Evidence provide that certain limited categories of evidence are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. As relevant here, Rule 902(11) allows for authentication of "certified domestic records of a regularly conducted activity" where a record "meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). A federal statute similarly provides that, in criminal cases, certain "foreign records of regularly conducted activity" may be authenticated and admitted into evidence using a "foreign certification." 18 U.S.C. § 3505 (a)(1). These rules are designed to avoid unnecessary expense and inconvenience in circumstances where the foundation for admission of evidence is not likely

to be in dispute, such as certain records of a regularly conducted business activity. *See, e.g.*, *Fifth Third Bancorp & Subs. v. United States*, 2008 WL 11351544, at \*3 (S.D. Ohio Mar. 28, 2008) ("Business records are viewed as unusually reliable because they are created through systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.") (citing Fed. R. Evid. 803(6), Advisory Committee Notes). The same principles also apply to "certified records generated by an electronic process or system." Fed. R. Evid. 902(13).

But the procedures for authenticating certain records using sworn certifications cannot be used to admit all records that happen to be stored in a company or other entity's files without calling a foundational witness. *Green*, 648 F.3d at 580; *Fifth Third Bancorp*, 2008 WL 11351544, at \*3 ("Not every document or item of business correspondence contained in a file constitutes a business record."). The records must actually bear the necessary indicia of reliability of business records. *See United States v. Petrunak*, 856 F.3d 484, 486 (7th Cir. 2017); *United States v. Petre*, 2017 WL 3499929, at \*4 (D. Me. Aug. 16, 2017) (defendant raised sufficient doubts about the trustworthiness of the underlying records to require testimony by records custodian at trial). Moreover, where a certification attests that documents bear such indicia even though they plainly do not, that fact itself calls into question the trustworthiness of the certification. *See Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 707-08 (E.D. Va. 2004) (finding that certifications were inadequate where they did not prove the trustworthiness of the documents).

These concerns are hardly theoretical. Last year, in *United States v. Connolly*, No. 16 CR. 370 (CM) (S.D.N.Y.), the government sought to introduce Deutsche Bank records using a certification attesting that records were created in the regular course of the bank's business. In

reality, a Deutsche Bank employee had simply signed a certification provided by in-house counsel and prosecutors without sufficient knowledge of the facts to which he attested. 2019 WL 2120022, at *20 (S.D.N.Y. May 2, 2019). The supposed Deutsche Bank business records had actually been created by a third party vendor in the course of the bank's internal investigation. *Id. Connolly* highlights why the Court should not allow the government to admit nearly half of its exhibits using certifications here. The defendants do not object to the proper admission of certain exhibits, such as the CME's market and trade data, using certifications, and they do not expect to challenge the authenticity of other evidence, such as emails. But, as to the question of admissibility – as opposed to authenticity – the government may not use certifications to circumvent the hearsay rules and the Constitution, which bar the admission of contested out-of-court assertions of fact.

## A. The CFTC Order

The defendants have already moved to preclude admission of evidence Deutsche Bank's $30 million no admit/no deny settlement with the CFTC as irrelevant and unduly prejudicial. *See* Def. Omnibus Mot. 9-11 (Dkt. 270) (order inadmissible under Rules 401 and 403).[2] But the government's proposal to admit the CFTC's order using a Rule 902(11) certification gives rise to yet another, independent objection: it is inadmissible hearsay not subject to any exception. Public records like the CFTC's order are not admissible under the public records exception to the rule against hearsay when offered against the defendant in a criminal case. Fed. R. Evid. 803(8)(A)(iii) (providing for the admission of a record or statement of public office offered "*against the government* in a criminal case") (emphasis added). And the Seventh Circuit has made clear that

---

[2] In March 2020, the defendants offered to stipulate that Deutsche Bank AG is a financial institution and that, if the scheme alleged in the Superseding Indictment were to be proven beyond a reasonable doubt, then Deutsche Bank would have been affected. The government had previously agreed to a similar stipulation in *United States v. Bogucki*, No. 18-cr-21 (N.D. Cal.). However, in this case, the government would not stipulate without reference to the CFTC penalty.

such records do not qualify for admission under any other exception unless the creator of the report is available for cross-examination. *See United States v. Blackburn*, 992 F.2d 666, 671-72 (7th Cir. 1993) (citing *United States v. King*, 613 F.2d 670, 673 (7th Cir. 1980). The government's proposal to admit the CFTC's order through a certificate "in lieu of testimony from document custodians," *see* Ex. A at 1, is therefore a non-starter.

Moreover, notwithstanding Mr. Kirkpatrick's certification, the CFTC's order in no way qualifies as a record of regularly conducted business activity under Rule 803(6). The order is a statement by the CFTC of its own findings, determinations, and sanctions. It reflects that agency's exercise of its judgment to enter into a negotiated settlement with Deutsche Bank. It was not "made at or near the time of the occurrence of the matters set forth" or by "a person with knowledge of those matters." *DirecTV, Inc. v. Reyes*, 2006 WL 533364, at *2 (N.D. Ill. Mar. 1, 2006). Nor was it "kept in the course of a regularly conducted business activity" or made "as a regular practice." *Id.* Indeed, the order, issued in 2018, is replete with hearsay about matters occurring years earlier and facts that Deutsche Bank did not admit to be accurate and did not consent to be used "by any other party in any other proceeding." Ex. B, Order, at 1 n.1; *cf. Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992) (non-party's guilty plea is inadmissible hearsay).

## B. Deutsche Bank Disciplinary Records

Deutsche Bank's records of its internal investigation into possible spoofing—including a letter outlining allegations against Mr. Vorley and an audio recording and transcript of Mr. Vorley's subsequent interview—are likewise not admissible as business records. *See* Ex. C, Gov't Ex. 105 ("Invitation to Disciplinary Investigation Meeting"); *see also* Dkt. 146-15 (Interview Transcript). The government proposes to admit these disciplinary records using a certification by Ms. Dolson that they are certified records of a foreign regularly conducted activity

under 18 U.S.C. § 3505(a)(1).  However, records relating to the bank's internal investigation were "not created with the kind of regularity or routine which gives business records their inherent reliability." *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 444 (7th Cir. 1997).

In *Palmer v. Hoffman*, 318 U.S. 109 (1943), the Supreme Court explained the distinction between records made and kept "in the regular course" of business and other kinds of records that may be made and maintained by the business.  *Palmer* involved accident reports created by a railroad engineer as part of his duties.  *Id.* at 111.  While acknowledging that such reports might have been kept "regularly" in connection with the railroad's business, the Court explained that the reports were not "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls."  *Id.* at 113.  Put another way, they were "not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like … [t]heir primary utility is in litigating, not in railroading."  *Id.* at 114.

Likewise, even if Deutsche Bank conducted an internal investigation into potential spoofing as part of its business, the records of such an investigation have nothing to do with the business of banking.  Moreover, the letter outlining allegations against Mr. Vorley[3] and his subsequent interview were anything but routine.  As explained in Mr. Vorley's motion to suppress his statements, Dkt. 146, at 7-8, 16, the bank sought this interview only after it had received document requests from the Department of Justice.  Although the bank had already completed an earlier investigation into potential spoofing—in which it had cleared Mr. Vorley—and had decided

---

[3] The letter, dated March 9, 2015, states that "[s]pecific matters have emerged from recently identified trading data that suggest that you may have engaged in inappropriate ordering and trading activity in relation to gold futures in breach of Bank policy."  Ex. C, Invitation to Disciplinary Investigation Meeting, at 1.  It then describes an instance of alleged "spoofing" on March 16, 2011, and suggests that the bank has identified other questioned trading sequences. *Id.* at 1-2.

to terminate Mr. Vorley's employment as part of a restructuring of its business, the bank required him to sit for another interview after his last day of work, under the threat of forfeiture of his deferred compensation. It then turned over the audio recording to the government. Records relating to this interview were not made and kept in the regular course of Deutsche Bank's business. *Cf. Pierce* 110 F.3d at 444 (affirming exclusion of memoranda to employee file); *Thakore v. Universal Mach. Co. of Pottstown*, 670 F. Supp. 2d 705, 723 (N.D. Ill. 2009) (investigation report prepared by the plaintiff's employer did not meet the requirements of 803(6)); *Ogborn v. United Food & Commercial Workers, Local No. 881*, 2000 WL 1409855, at *3 n. 8 (N.D. Ill. Sept. 25, 2000) (items from a personnel file were not admissible as business records); *Jones v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 75 F. Supp. 2d 885, 888 (N.D. Ill. 1999) (same).

### C. Other Deutsche Bank Records

Many of the other Deutsche Bank records that the government seeks to admit using certifications are inadmissible for similarly obvious reasons. Particularly in light of the problematic certification in *Connolly*, 2019 WL 2120022, at *20, the Court should not allow the wholesale admission of evidence without considering each certification and the accompanying records to which it applies.

First, Ms. Dolson's certifications purport to cover myriad records—including employee personnel files, compensation records, bank policies, photographs, organizational charts, and Mr. Vorley's disciplinary records. Many of these records contain multiple levels of hearsay, none of which is addressed by the certificate, and Ms. Dolson's certifications say nothing about the processes by which the exhibits were created and maintained.[4] *See Vetter v. Dozier*, 2010 WL

---

[4] For example, Ms. Dolson purports to certify the authenticity of Government Exhibits 96, 98, 99, 100, 103, and 104, consisting of "Performance Management Reports" pertaining to Mr. Vorley, Mr. Chanu, and Mr. Liew. *See* Ex. A-

1333315, at *6 (N.D. Ill. Mar. 31, 2010) ("If any person in the process is not acting in the regular course of the business, then an essential element in the trustworthiness chain fails.") (internal citations and quotations omitted). She merely states, "Through my employment, I have become familiar with the company's business operations and record keeping practices." Ex. A-8, Cert. (DOJ04563714). But there is no indication that Ms. Dolson, as Global Head of eDiscovery Services, has sufficient knowledge of any of those processes, let alone all of them, to establish that the documents she purports to certify actually qualify as business records. *Cf. Richards v. Now, LLC*, 2019 WL 2026895, at *8 (C.D. Cal. May 8, 2019) ("[The declarant's] role does not appear to be a managerial one requiring authentication and oversight of voluminous business records for the entire company regarding employee count, payroll, and shift information."); *Reyes*, 2006 WL 533364, at *9 ("[The declarant's] declaration contains insufficient foundation to establish that she has personal knowledge of the way in which [the declarant's company] records are created and maintained.").[5]

Ms. Lane's certification fares no better. She states solely that records of Deutsche Bank's payment of $30 million to the CFTC are "records that Deutsche Bank retained for the purposes of running its business." Ex. A-5, Cert. (DOJ04563720). This certification fails to establish when the records were made or that they were made and kept in the regular course of business. Indeed, the payment of a $30 million fine to the CFTC can hardly be said to be a regular part of Deutsche Bank's business.

---

8, Cert. (DOJ04563714); Ex. D, Performance Management Reports. These reports appear to include input from managers and the employee being evaluated, with comments on financial results, operations, client relationships, leadership, and technical ability. The comments appear to be based more on hearsay than personal knowledge.
[5] Ms. Dolson's certification also fails to meet the requirements of a "foreign certification," which "if falsely made, would subject the maker to criminal penalty under the laws of *that* country." 18 U.S.C. § 3505(c)(2).

Finally, Ms. Sarocco's certification not only fails to meet the requirements of Rule 902(11), but it also purports to cover licenses and certificates *not created by Deutsche Bank*. While these records may conceivably be admissible as business records, Ms. Sarocco's certificate says nothing about how they were created or maintained. *Cf. Deutsche Bank Nat'l Tr. Co. v. Hopkins*, 2014 WL 6811154, at *5 (C.D. Ill. Dec. 3, 2014) ("Nothing in the record supports the conclusion that Ms. Maguire is competent to testify about Litton's records or has any basis to possess personal knowledge concerning Litton's records."); *Rambus*, 348 F. Supp. at 706-07 ("no declarations from the outside entities and none of the proffered declarations otherwise recite any fact that shows qualification by the participant in the chain who actually supplied the information"). The Federal Rules of Evidence forbid the admission of these Deutsche Bank and third-party documents using the proposed certifications.

## II.  THE PROPOSED CERTIFICATES SEEK TO ADMIT TESTIMONIAL EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE

The Court should also preclude the admission of "testimonial" evidence without a live witness who can be cross-examined. *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). Evidence prepared with litigation in mind is quintessentially "testimonial." *Melendez-Diaz v. Mass.*, 557 U.S. 305, 324 (2009). While business records and related certifications are not testimonial, *see United States v. Ellis,* 460 F.3d 920, 927 (7th Cir. 2006), that is not the case here. Indeed, some of the certifications themselves go beyond certifying business records, attesting to facts supporting the prosecution. None of this evidence is admissible without a live witness who can be cross-examined at trial.

First, the CFTC's order—created and filed in court as part of a negotiated settlement—was created specifically for the purpose of litigation. Deutsche Bank's disciplinary records, created during an internal investigation while it was cooperating with the government, were also created

14

with litigation in mind.  The introduction of this evidence using certifications rather than live witnesses who can be cross-examined would violate the Confrontation Clause.

Second, the two FDIC certifications contain testimonial statements concerning (a) the applicability of insurance to various Deutsche Bank entities and (b) a search of the FDIC's files. Such statements—which the government apparently intends to use to prove that Deutsche Bank was a "financial institution"—are testimonial.  *See United States v. London*, 746 F. App'x 317, 322 (5th Cir. 2018) (statement that "'after diligent search, no record or entry' was found terminating the FDIC status of any of the three banks" was testimonial and admission without the ability for the defendant to cross-examine the declarant violated the confrontation clause); *United States v. Sandles*, 469 F.3d 508, 515-16 (6th Cir. 2006) (same); *see also United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) (certificate of a nonexistence of record ("CNR") was testimonial).

Finally, Ms. Dolson's certification that "the time zones [for dozens of electronic communications] reflect, to the best of Deutsche Bank's current knowledge and understanding after a diligent and reasonable investigation, the time zones that apply to the [communications]," Ex. A-10, Doc. Cert.(DOJ04563727), is testimonial.  The statement (i) contains no indication of the process by which the time zones were supposedly determined and (ii) was created for the express purpose of this litigation.  It is not admissible without an opportunity for the defendants to cross-examine the witness with knowledge of the process.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should preclude the admission of the foregoing government exhibits using certificates instead of testimony by document custodians.

15

Dated: August 21, 2020

/s/ Roger A. Burlingame
Roger A. Burlingame
Matthew L. Mazur (*pro hac vice*)
Lauren A. Bowman (*pro hac vice*)
Dechert LLP
160 Queen Victoria Street
London EC4V 4QQ
United Kingdom
Phone: +44 20 7184 7000
Roger.Burlingame@dechert.com
Matthew.Mazur@dechert.com
Lauren.Bowman@dechert.com

Christopher Burrichter
Dechert LLP
35 West Wacker Drive, Suite 3400
Chicago IL 60601
Telephone: (312) 646-5800
Christopher.Burrichter@dechert.com

**Attorneys for James Vorley**

Respectfully submitted,

/s/ Michael G. McGovern
Michael G. McGovern (*pro hac vice*)
Helen Gugel (*pro hac vice*)
Megan A. McEntee (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Michael.McGovern@ropesgray.com
Helen.Gugel@ropesgray.com

Aaron M. Katz (*pro hac vice*)
Katherine M. McDonald (*pro hac vice*)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
Aaron.Katz@ropesgray.com
Katherine.McDonald@ropesgray.com

Laura G. Hoey
Ropes & Gray LLP
191 North Wacker Drive
Chicago, IL 60606
Telephone: (312) 845-1318
Laura.Hoey@ropesgray.com

**Attorneys for Cedric Chanu**

## <u>CERTIFICATE OF SERVICE</u>

I, Roger A. Burlingame, hereby certify that on August 21, 2020, the foregoing was filed via the Court's CM/ECF system, which will automatically serve and send notification of such filing to all registered attorneys of record.

*/s/ Roger A. Burlingame*
Roger A. Burlingame