**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 CR 00035 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| JAMES VORLEY and ) | |
| CEDRIC CHANU, ) | |
| ) | |
| Defendants. | |

**ORDER**

As explained further in the Statement below, the government has leave to supplement its motion to admit evidence of coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) [199] to address the deficiencies below by Thursday, September 3. Failure to address the identified deficiencies will result in denial of the motion and forfeiture of any argument to admit evidence pursuant to Rule 801(d)(2)(E). Defendants may respond to any supplement by the government by Wednesday, September 9, 2020.

**STATEMENT**

Pursuant to the Court's order [152], the government has filed a proffer of its evidence supporting the admission of statements of coconspirators in furtherance of the charged conspiracy (the "*Santiago* proffer"). *See United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). The government's proffer is deficient in two significant respects. First, the proffer includes no discussion of evidence the government intends to introduce to show that the alleged "Fraudulent Orders" falsely represented their intention to execute those orders. And second, although the government appears to have heeded the Court's instruction to identify in the *Santiago* proffer all statements it seeks to introduce through Rule 801(d)(1)(E), in many cases the government has simply presented the statements without explanation as to why they can be deemed to have been made "in furtherance of" the alleged conspiracy.

Count One of the superseding indictment charges the defendants with conspiracy to commit wire fraud affecting a financial institution, in violation of 18 U.S.C. §§ 1343 and 1349. The defendants' principal argument is that the evidence proffered by the government is not indicative of a criminal agreement. "[T]hat traders on Deutsche Bank's precious metals desk at times worked together to make money for the bank," they argue, does not provide a basis to infer a criminal agreement among the traders. That is true enough, but that does not make the fact that the defendants worked together and shared the profits of their endeavors irrelevant; were the government to fail to introduce such evidence at trial, the defendants would have every right to

comment on that failure. Such evidence is necessary but not sufficient and the government offers plenty to establish that the defendants worked in concert with the alleged coconspirators.

The same cannot be said, however, as to the evidence that there was an agreement not just to work together for their mutual benefit, but also to commit a crime. As the defendants correctly note, the government has failed to proffer any evidence to support the key disputed fact in the case, namely that the placement of an order to buy or sell futures contracts carries with it a representation that the party entering the order intends—at the moment the order is placed—for the order to be executed by a counterparty. The government refers variously to the defendants and coconspirators' engagement in "deceptive" and "fraudulent" trading. The two are not necessarily the same thing. As the defendants argue, not all forms of deception used in trading are fraudulent. The use of iceberg orders provides a clear example. Iceberg orders permit a trader to hide from the market the true volume of a bid or offer, but it is not disputed that iceberg orders, standing alone, are not unlawful, much less fraudulent. The conduct alleged in the indictment to be criminal is the entry of an order that one intends to cancel before it can be executed. The government maintains that a market order carries with it an implied representation as to that intent and alleges that the defendants and their coconspirators therefore made fraudulent misrepresentations and omissions when they entered orders they intended to cancel before they could be executed. To carry the day, the government will have to prove not just that the defendants engaged in "deceptive" trading, but that they engaged in trading that was fraudulent in this manner.

This is no recent revelation. As this Court observed in denying the defendants' motion to dismiss the indictment, the "central fact question presented by the indictment" is "whether the defendants' Spoofing Orders carried with them any implied misrepresentations." MTD Opinion, ECF No. 119, at 6. Remarkably, however, the government's proffer does not include any discussion of evidence it intends to present to establish that futures market orders (generally, or the orders specifically at issue in this case) are (or were) understood to carry an implicit representation by the trader that he or she intended for the order to be executed at the time it was entered.

This is a gaping hole in the government's proffer. That the Court has some general awareness that the government intends to offer testimony from "victims" of the alleged scheme, or that excerpts from chat communications the government intends to offer may suggest some acknowledgment by the defendants or their alleged coconspirators that their orders would or did deceive counterparties as to their intention to trade, is not sufficient to plug the gap. It is not the Court's job to piece together the government's evidence from disparate sources in order to make a case for admitting coconspirator statements, of course, and that is all the more true as to an issue the Court identified nearly a year ago as the "central fact dispute" in this case. If the Government seeks to introduce statements pursuant to Rule 801(d)(2)(E), it must address this glaring deficiency in its proffer.

But that's not the only problem with the government's proffer. While the government appears to have diligently complied with the Court's prior instruction to identify in its Santiago proffer all statements that it intends to introduce in reliance on Rule 801(d)(2)(E), the defendants correctly point out that as to most of the putative coconspirator statements, the government has

provided no explanation for why those statements should be deemed to have been made "in furtherance of" the alleged conspiracy. For most of these statements, the government simply sets forth an excerpt of the communication without explanation. For some, the reason they are deemed to be in furtherance of the alleged conspiracy may be discernable without an explanation, but others are more opaque, whether due to ambiguous terminology or the substance of the statement. Again, neither the Court nor the defendants should be required to guess why these statements are deemed to have been made in furtherance of the conspiracy. It is not asking too much for the government to supply the basis of its rationale as to the identified statements. The alternative is for the Court to deny the motion because the meaning and import of the statements cannot be ascertained.

The government's proffer should have addressed these issues. In view of the fact that this is a pretrial motion in limine, however, the Court finds it appropriate to permit the government to supplement its submission before trial. As to the implied misrepresentation issue, the government's supplement is limited to five pages; as to the "in furtherance" issue, the discussion should also be brief and focused, but the Court will not set a specific page limit. The same requirements apply to the defendants' response to the government's supplement.

Date: August 30, 2020

_____
John J. Tharp, Jr.
United States District Judge